IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OWNER-OPERATOR INDEPENDENT DRIVERS )
ASSOCIATION, INC., et al., )
)
                Plaintiffs, )
)
v. ) No. 04 C 3207
)
ALLIED VAN LINES, INC., et al., )
)
                Defendants. )

## MEMORANDUM OPINION AND ORDER

This putative class action by Owner-Operator Independent Drivers Association, Inc. ("Association") and Rodney Rockwell[1] against Allied Van Lines, Inc. ("Allied") and TFC, Inc. ("TFC") has been hanging fire for a fair amount of time at the class certification stage, because the parties' extensive briefing has necessitated a hard look at the criteria established by Fed. R. Civ. P. ("Rule") 23 in the context of the claims advanced in the Complaint. In the past this Court had little occasion to write on the class certification subject, for those criteria are long-familiar and their application to specific case situations has rarely added any substance to the corpus juris.

In this instance, however, the issues clearly call for extended treatment. As the confusing aphorism puts it, "the

---

[1] In the interest of simplicity, only Association will be referred to hereafter, except where Rockwell's individual claim needs to be mentioned.

exception proves the rule (here Rule 23).[2] And with the litigants' counsel having completed their submissions, this Court can turn to the task.[3]

## Background for Potential Certification[4]

TFC is an agent of Allied that transports freight in vehicles leased from independent owner-operators. Approximately 100 such owner-operators, through Association, initiated this action against both Allied and TFC, charging numerous violations of the federal Truth-in-Leasing regulation at 49 C.F.R. §376 ("Regulation"). Among other things, TFC's leases are said impermissibly:

    1. to condition any return of escrow funds on an owner-operator's having given at least 30 days' notice before its lease termination,

    2. to require owner-operators to pay for a variety of administrative and other services and

---

[2] Full disclosure compels this Court to acknowledge that the bobtailed and more familiar English version of the aphorism lends itself better to the bad pun in the text than the aphorism's Latin origin: <u>Exceptio probat regulum in casibus non exceptis</u>, which in literal translation reads "the exception proves the rule in cases not excepted."

[3] Again for simplicity, this opinion will use "P."--for plaintiffs--to refer to the Association-Rockwell submissions and "D."--for defendants--to refer to the Allied-TFC submissions.

[4] As explained in the Appendix, for present purposes this opinion does not go behind the Complaint's allegations to the merits. Accordingly the text omits such qualifiers as "allegedly," though this Court makes no findings as to the facts.

2

3. to charge owner-operators for TFC's public

liability insurance premiums.

Association claims that those violations warrant declaratory, injunctive and monetary relief, and it now seeks certification of a Rule 23 class to pursue that relief on behalf of all owner-operators of motor vehicle equipment who after May 5, 2000[5] were parties to federally-regulated leases with TFC.[6]

Rule 23(a) sets out the four preconditions to class action treatment that are familiarly shorthanded as (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation. Beyond that, class certification requires the satisfaction of at least one of three additional requirements specified in Rule 23(b). It is of course the burden of the party seeking certification to demonstrate that the case satisfies those requirements (Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993)), and it has long since

---

[5] That date reflects this Court's July 16, 2004 memorandum order that denied the Allied-TFC motion to impose a two-year statute of limitations period, instead applying the catchall four-year limitation period prescribed in 28 U.S.C. §1658(a). Because the lawsuit was filed on May 5, 2004, the limitations cutoff date becomes May 5, 2000.

[6] Association comprises approximately 40,000 owner-operators who own or control some 66,000 trucks used to haul property on the nation's highways. Association regularly represents members in lawsuits such as this one, and it is also engaged in legislative lobbying on behalf of its members. Co-plaintiff Rockwell is an owner-operator who entered into leases with TFC for the years 1999, 2000 and 2002.

3

been established that "[f]ailure to meet any one of the requirements of Rule 23 precludes certification of a class" (Valentino v. Howlett, 528 F.2d 975, 978 (7th Cir. 1976)(per curiam)).

### Rule 23(a)

From documents produced by TFC, Association has identified 32 owner-operators who are currently under TFC leases and 82 additional owner-operators who were subject to leases with TFC at one time or another during the four-year time frame of the proposed class definition. Moreover, those owner-operators are geographically dispersed (and in fact are almost constantly on the move), which increases the impracticability of individualized joinder (Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D. Ill. 1986)). Taken together, those assertions plainly meet the numerosity requirement, and Allied-TFC have not objected on that score.

As to typicality, Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992), quoting De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983), explains the requirement in simple terms:

> We have previously stated that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."

Here it is unquestionable that all of the asserted claims arise

from the same course of conduct (TFC's inclusion of certain provisions in its standard lease) and are based on the same legal theory that those provisions violate applicable federal regulations. That clears the low hurdle of Rule 23(a)(3), which requires neither complete coextensivity nor even substantial identity of claims.

This Court's June 29, 2004 memorandum order stated that "Rockwell and MacVittie[7] are the claimed proxies for all other members of the putative class for damages relief, while Association is (quite permissibly) in the case solely for injunctive or declaratory relief or both." TFC now asserts that any claims for injunctive or declaratory relief have been mooted, so that Association is not a proper class representative.

But TFC's mootness argument is plainly a non-starter for reasons that will be discussed later in this opinion. And that in turn means that Association may serve as the class representative for its members as to declaratory and injunctive relief (see UAW v. Brock, 477 U.S. 274, 281-82 (1986)). As for the other claims for relief, Rockwell remains the class representative, and it has not been suggested at any point during the proceedings that his interests are antagonistic to those of

---

[7] Former co-plaintiff Patrick MacVittie was dismissed without prejudice on August 6, 2004 by joint motion occasioned by his bankruptcy filing. That made no difference to the case, given the continued presence of the other two co-plaintiffs.

5

other class members (Rosario, 963 F.2d at 1018) or that his counsel is deficient either as to vigorousness of advocacy or competency.

Finally, Allied-TFC contend that the commonality prong has not been satisfied. As with typicality, the cases have not been overly restrictive in setting out the requirements for commonality, with the existence of a common nucleus of operative fact usually being enough to qualify (Rosario, 963 F.2d at 1018). But because Rule 23(b)(3) establishes the more demanding test that common issues must predominate over questions affecting the individual class members (a test that by definition subsumes the issue of commonality), consideration of this element will be deferred to the upcoming Rule 23(b)(3) analysis.

## Rule 23(b)

Association argues that the proposed class could be certified under either Rule 23(b)(2) or Rule 23(b)(3). As indicated earlier, Rule 23(b) is framed in disjunctive terms, so that satisfaction of only one of its provisions will suffice for class certification. That often permits considerable narrowing of the analysis in an opinion such as this, but the scope of relief sought here calls for consideration of both Rule 23(b)(2) and 23(b)(3).

Declaratory and Injunctive Relief

Under Rule 23(b)(2) a class can be certified if "the party

opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Much of the relief sought by Association on behalf of its members fits that description. Association claims that TFC has included standard provisions that violate federal regulations in all of its leases with owner-operators, and Association seeks declaratory and injunctive relief to require those (and any future) leases to be brought into compliance. Hence much of what Association seeks is precisely what the Advisory Note to the 1996 amendment of Rule 23 described as the intended role of Rule 23(b)(2) class actions: "final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole" (see also <u>Jefferson v. Ingersoll Int'l, Inc.</u>, 195 F.3d 894, 897-98 (7th Cir. 1999)).[8]

For their part, Allied-TFC object to Association's effort to invoke Rule 23(b)(2) by asserting that any potential need for declaratory or injunctive relief has been mooted by TFC's conduct since the initiation of this action. Specifically they point out (D. Mem. 24) that TFC "is currently in the process of

---

[8] Relatedly, the blanket effect of such relief is precisely why Rule 23(b)(2) does not have a notice requirement or an opt-out provision. As <u>In re Allstate Ins. Co.</u>, 400 F.3d 505, 507 (7th Cir. 2005) has recently put it, class members seeking declaratory or injunctive relief "all sink or swim together."

7

implementing a new form of lease that addresses each of the claimed deficiencies identified in the lease attached to the Complaint" and that they do "not anticipate that [Association] will take issue with its terms."

On that latter score, Allied-TFC were quite predictably mistaken: Association has objected to various provisions of the new proposed form of lease (P. R. Mem. 10-11). But even apart from those renewed objections, the Allied-TFC argument misses the mark. Mooting a claim for injunctive relief is not a simple matter of assuring the court that change is on the way. Quite to the contrary, it is well established that "[v]oluntary cessation of allegedly illegal conduct does not render a case moot unless the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated" (Milwaukee Police Ass'n v. Jones, 192 F.3d. 742, 747 (7th Cir. 1999)(internal quotation marks omitted)).

Here Allied-TFC have not attempted any such demonstration, have not proffered a copy of the new TFC standard lease provisions that they view as exculpatory and have not given even so much as a bland assurance that those provisions will be applied to existing leases (as would be required to moot Association's claims for declaratory and injunctive relief in their entirety). All of that renders their mootness objection to Rule 23(b)(2) certification toothless and wholly unpersuasive.

Beyond that Allied-TFC interpose no objection to Association's contention that Rule 23(b)(2) class certification is appropriate. And indeed such certification is sensible from the perspective of Allied-TFC as well. Plainly TFC has an interest in maintaining the uniformity of its standard lease form. To the extent that its lease form is subject to legal review, that review on a class-wide basis provides a safe harbor, avoiding piecemeal attacks that could undermine TFC's ability to maintain uniformity.

In sum, this Court finds that the proposed class satisfies the criteria for certification under Rule 23(b)(2). This determination covers Paragraphs 2 through 6 of Association's Prayers for Relief contained in the original Complaint, except for this language from Paragraph 5: "and for damages, all pursuant to 49 U.S.C. §14704(a)(2), and including pre- and post-judgment interest, as allowed by law."[9] This opinion now turns to that language and all other claims for relief.

---

[9] Jefferson, 195 F.3d at 897-98 instructs that Rule 23(b)(2) is not an appropriate subsection for actions seeking damages that are more than incidental. So Association's just-quoted effort to recover damages cannot properly be pursued under Rule 23(b)(2). As for the first half of Paragraph 5, however, Association requests "restitution and disgorgement of sums unlawfully deducted from compensation in violation of 49 C.F.R. §376.12." That kind of equitable monetary relief, like back pay in the Title VII context, can properly be a part of Rule 23(b)(2) consideration, particularly when its computation is as mechanical as it would be here (see Allstate, 400 F.3d at 507).

Monetary Relief

In addition to declaratory and injunctive relief, Association asks for the award of money damages pursuant to 49 U.S.C. §14704(a)(2):

> A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

Association also demands (1) an accounting of all transactions involving owner-operator escrow funds, (2) the creation of a common fund made up of all damages awarded to class members and (3) attorneys' fees (Prayer for Relief ¶¶5-10). Because of the limitation on such Rule 23(b)(2) relief identified in n.9, Association must instead satisfy the Rule 23(b)(3) criteria for certification to pursue those remaining claims.

Rule 23(b)(3) permits certification of a class if "[t]he court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair adjudication of the controversy." In common parlance those requirements are referred to as "predominance" and "superiority."

As to the first of those, Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997) teaches that "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are

10

sufficiently cohesive to warrant adjudication by representation." In practical terms, "[s]atisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy?" (Johns v. DeLeonardis, 145 F.R.D. 480, 484-85 (N.D. Ill. 1992)).

Allied-TFC call for a "no" answer to that question because they say Association's claims for monetary relief are too individualized to be amenable to adjudication on a class-wide basis. It is of course true that 49 U.S.C. §14704(a)(2) speaks only of "damages sustained by a person as a result of an act or omission" that violates the regulations. Because the existence and quantification of such damages must ultimately be resolved on a case-by-case basis (for example, the allegedly unlawful treatment of funds held in escrow accounts will require an examination of each class member's account) rather than established via generalized proof, Allied-TFC maintain that individual, rather than common, issues of both law and fact predominate.[10]

---

[10] Allied-TFC actually go further, suggesting that the individualized issues as to damages are actually a component of liability rather than remedy because a showing of sustained damages is a predicate for liability. That just won't fly. When the statute says a carrier is "liable for damages sustained by a person...," it identifies the amount of any recovery rather than liability. Liability is a function of whether or not a "violation of this part" has occurred--an issue common to all class members. If so, the carrier is liable for the consequences

sufficiently cohesive to warrant adjudication by representation." In practical terms, "[s]atisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy?" (Johns v. DeLeonardis, 145 F.R.D. 480, 484-85 (N.D. Ill. 1992)).

Allied-TFC call for a "no" answer to that question because they say Association's claims for monetary relief are too individualized to be amenable to adjudication on a class-wide basis. It is of course true that 49 U.S.C. §14704(a)(2) speaks only of "damages sustained by a person as a result of an act or omission" that violates the regulations. Because the existence and quantification of such damages must ultimately be resolved on a case-by-case basis (for example, the allegedly unlawful treatment of funds held in escrow accounts will require an examination of each class member's account) rather than established via generalized proof, Allied-TFC maintain that individual, rather than common, issues of both law and fact predominate.[10]

---

[10] Allied-TFC actually go further, suggesting that the individualized issues as to damages are actually a component of liability rather than remedy because a showing of sustained damages is a predicate for liability. That just won't fly. When the statute says a carrier is "liable for damages sustained by a person...," it identifies the amount of any recovery rather than liability. Liability is a function of whether or not a "violation of this part" has occurred--an issue common to all class members. If so, the carrier is liable for the consequences

In support of that contention, Allied-TFC rely heavily on Association's Eighth Circuit loss in Association[11] v. New Prime, Inc., 339 F.3d 1001 (8th Cir. 2003), where the Court of Appeals affirmed the denial of class certification to a group of owner-operators alleging similar violations. Echoing the present position of Allied-TFC, New Prime, id. at 1012 concluded:

> To make such determinations [of whether damages were sustained], a court would be required to examine each individual class member's account, including offsets, advances, and other items. Recovery for any plaintiff would be based on individual, not common, questions of fact.

But that approach is something of an outlier.[12] Several district courts in this circuit have certified class actions in factually analogous situations, despite the need to determine damages individually (see, e.g., Association v. Mayflower Transit, Inc., 204 F.R.D. 138 (S.D. Ind. 2001)). And our Court of Appeals, while not squarely addressing the precise issue presented here, has signaled in Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004) that the existence of

---

of that violation (for example, the injunctive relief already discussed) even in the absence of a proof of individual damages.

[11] This opinion uses the shorthand term "Association" in the caption of that case and the other case cited in the text in which it was plaintiff.

[12] Association also contends that New Prime is unpersuasive for the additional reason that a key factual distinction exists: Here, unlike in that case, TFC has not asserted any class-wide offsets in the form of funds owed by owner-operators to TFC.

12

individualized issues regarding damages does not spell doom for class certification (indeed, that is especially true where the individualized claims are small).

Class certification in the face of individualized damages is particularly appropriate when a common factual issue acts as a predicate to recovery by any class member. So for example Allstate, 400 F.3d at 508 recently observed that a proposed class action stemming from a common employment policy "may well be highly suitable":

> A single hearing may be all that's necessary to determine whether Allstate had a policy of forcing its employee agents to quit. This issue could be decided first and then individual hearings conducted to determine which of the members of the class were actually affected by the policy rather than having decided to quit for their own reasons. Fed. R. Civ. P. 23(c)(4)(A). That would be a more efficient procedure than litigating the class-wide issue of Allstate's policy anew in more than a thousand separate lawsuits.

And that is directly in line with the standard treatise on the subject, which notes that "[c]ommon issues may predominate when liability can be determined on a classwide basis, even when there are some individualized damages issues" (Alba Conte and Herbert Newberg, Newberg on Class Actions §4.25 (4th ed. 2002)).

In this case a common threshold factual issue--whether TFC's standard lease provisions violate the applicable regulations--will determine the ability of any class members to recover. That satisfies the "predominance" inquiry for Rule 23(b)(3) purposes. As for the individual damages issues that will follow if that

13

common issue goes Association's way, Carnegie, 376 F.3d at 661 (internal quotation marks omitted) neatly identifies the array of possible outcomes. First there is of course the possibility of a class-wide settlement. Failing that:

> Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

Both sides can be assured that this Court will not hesitate to fashion one or more appropriate solutions if the need arises.

There remains the superiority prong. Courts have frequently found that requirement met where, as here, a relatively small amount will be recoverable by each individual plaintiff, so that the injured parties would be unlikely to pursue their claims individually (Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985)).

Here the individual amounts recoverable are indeed relatively small, suggesting that many class members would not choose to pursue their claims individually. And Association also points out that the typical putative class member here spends a majority of time away from home, constantly driving to far-flung destinations. That too supports the superiority of the class

action device for maintaining this action. In sum, this Court holds that considerations of judicial economy and fairness militate strongly in favor of certification as a Rule 23(b)(3) class as well.[13]

## Class Definition

With Association having demonstrated the appropriateness of class certification under both Rule 23(b)(2) and 23(b)(3), this opinion turns to consideration of the class definition in the latter respect. Because as discussed earlier recovery under that rubric would be limited to owner-operators who can show actual damages resulting from TFC's alleged violations (if proved, of course), this Court has considered the possibility of carving the Rule 23(b)(3) class down to those who make that showing. That was the approach taken in Mayflower Transit, 204 F.R.D. at 149.[14]

But it should be remembered that class certification cuts both ways: It provides the class members with the benefit of any

---

[13] Two additional objections to class certification raised by Allied-TFC merit only brief attention at this point. They are dealt with in the Appendix.

[14] There the class was defined in these terms:

> All independent truck owner-operators...who entered into regulated leases with Mayflower, directly or indirectly through Mayflower's agents, and who have each paid money into an escrow or "cash deposit" account held by Mayflower or its agents, and who in good faith may assert that Mayflower unlawfully refused to rebate the moneys deducted from their compensation.

15

Appendix

More than three decades ago Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974) announced that "nothing in either the language or history of Rule 23...gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." Although that admonition has attained near-gospel status in almost innumerable cases since then, our Court of Appeals has recently said in Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 676 (7th Cir. 2001) that Eisen does not prevent a district court from making a preliminary inquiry into the merits of a case when such an inquiry is necessary to determine the propriety of class certification.

Apparently encouraged by Szabo, Allied-TFC have advanced two merits-based contentions. First, they argue that the standard by which TFC's compliance with the federal regulations should be judged is merely one of "substantial compliance." Second, they claim that Association should be required to show the owner-operators' detrimental reliance on the terms of the lease agreement before it can recover. For its part, Association responds to the first of those objections by arguing that "strict compliance" is the appropriate standard and to the second by suggesting that other courts, in similar cases, have permitted class members to recover without a showing of detrimental reliance.

This entire subject has been relegated to this Appendix because it is obvious that neither issue identified here needs resolution to determine the appropriateness of class certification. Instead those classic merits-related issues will be deferred for another day.

success on the merits without their having to litigate singly and on their own, and it insulates the targeted defendants against having to respond to other lawsuits (except by anyone who elects to opt out under Rule 23(b)(3)) once the class action is resolved. That latter goal (as well as the former) is best served by employing the identical class definition for both aspects of this action--with the opt-out rights of class members to be limited, of course, to the Rule 23(b)(3) aspects of the litigation (see, e.g., Allstate, 400 F.3d at 507).

This treatment is entirely in accord with the view expressed by our Court of Appeals in Lemon v. Int'l Union of Operating Eng'rs Local 139, 216 F.3d 577, 581 (7th Cir. 2000):

> a district court could certify a Rule 23(b)(2) class for the portion of the case addressing equitable relief and a Rule 23(b)(3) class for the portion of the case addressing damages. This avoids the due process problems of certifying the entire case under Rule 23(b)(2) by introducing the Rule 23(b)(3) protections of personal notice and opportunity to opt out for the damages claims.

Accord, Jefferson, 195 F.3d at 898.

## Conclusion

In sum, Association and Rockwell have readily met the criteria for class certification. Their motion for such certification under both Rule 23(b)(2) and 23(b)(3) is therefore granted. This action is set for a status hearing at 8:45 a.m. on

16

May 27, 2005 to discuss further proceedings in the case.

                                      */s/ Milton I. Shadur*
                                      _____
                                      Milton I. Shadur
                                      Senior United States District Judge

Date:  May 23, 2005